J-S43025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GAVIN ANTHONY WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1284 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 7, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0002229-2023

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JULY 2, 2026**

Gavin Anthony Williams appeals from the judgment of sentence imposed following his convictions for firearms not to be carried without a license, possession of an instrument of a weapon, and recklessly endangering another person ("REAP").[1] This case returns to us after we remanded for counsel to file the notes of testimony from Williams's trial as they were not included in the certified record. Counsel complied and has now filed an ***Anders***[2] brief and an application to withdraw as counsel. We affirm the judgment of sentence and grant counsel's application to withdraw.

On July 27, 2023, multiple calls were placed to 911 reporting that shots had been fired on Main Street near Philly Pub in Stroudsburg. N.T. Trial,

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1), 907(b), and 2705, respectively.

[2] ***Anders v. California***, 386 U.S. 738 (1967).

5/23/24, at 32, 34-36. Police were dispatched to the scene. *Id.* at 43. While processing the scene, police found a live 9-millimeter round on Main Street, several spent 9-millimeter casings on North Sixth Street, which is just off of Main Street, and a bullet hole in a glass lobby door to an apartment building located at 9 North Sixth Street. *Id.* at 82, 97-98.

At trial, Detective Rui Macedo testified that he reviewed video footage from various businesses in the vicinity. The video first showed Thomas Green being ejected from Philly Pub by a bouncer, with his girlfriend, Stephanie Ford, following him. *Id.* at 124, 126, 194. The video next showed Williams leaving the bar and "go right towards Mr. Green when he came out of that bar[.]" *Id.* at 195-96. Williams and Green began to fight and were "exchanging fisticuffs." *Id.* at 126-27, 181-82, 194, 196. Williams was wearing a "fanny pack" slung over his shoulder. *Id.* at 128. Detective Macedo was able to identify Williams by his tattoos, body shape, hair style, and facial hair. *Id.* at 155. The video showed Green and Ford walking away from the bar and Williams following them. *Id.* at 132-33, 135, 196.

At one point in the video, Detective Macedo observed Williams reach over to his back right waistband and draw a firearm. *Id.* at 183. The video showed that Williams had the firearm in his right hand in multiple frames. *Id.* at 134-35. Detective Macedo believed that Williams racked the slide of the firearm when "his left hand goes to the front of his body." *Id.* at 181, 183, 186, 193.

- 2 -

Detective Macedo testified that he had no doubt that the object Williams was holding was a firearm based on its shape and configuration and the way in which Williams manipulated it. *Id.* at 134, 170-71. Detective Macedo did not believe that the item was a fake gun or a form of a "less than lethal projectile" designed to look like a gun because a live 9-millimeter round was found on the ground near Philly Pub, four 9-millimeter shell casings were found on Sixth Street, a bullet hole was found in a building, two 911 callers reported that shots were fired, and a witness testified that he heard gunshots. *Id.* at 197-99. He said those facts are inconsistent with the use of a non-lethal projectile launcher. *Id.* Detective Macedo explained that "just by the totality of everything I put together with the recovered evidence that we found on scene, the video, . . . with what I believe [Williams] was doing with the firearm, . . . racking the slide, producing that live round, that's what led me to believe that that is a firearm." *Id.* at 186.

The Commonwealth introduced a Google Maps view of the route that Williams was seen taking in the video footage, as well as a timeline of his location based on the timestamps from the footage. *Id.* at 147-50, 152, 163; Commonwealth Exhibits 9, 11. The video footage showed Williams running down an alley away from North Sixth Street holding the firearm in his right hand and with the black strap across his shoulder. N.T. at 137-40. The video depicted Williams near the glass door of the lobby of the apartment building at 9 North Sixth Street, where a bullet hole was later found. *Id.* at 139-40, 145-46. This apartment building was later determined to be where Ford lived.

*Id.* at 145-46, 167, 203. Police were unable to physically locate Williams that night but later brought charges against him. *Id.* at 155-56. The firearm was never recovered. *Id.* at 102, 160. Williams did not have a license to carry a firearm. *Id.* at 162, 187; Commonwealth Exhibit 10.

The jury found Williams guilty of the above offenses. He was sentenced to 42 to 84 months' incarceration on the firearms not to be carried without a license count, and nine to 18 months each on the remaining counts, to be run concurrently. Williams filed a post-sentence motion, which was denied on October 16, 2024. Approximately two months later, Williams filed a Post-Conviction Relief Act petition. On April 14, 2025, the court reinstated Williams's direct appeal rights. This appeal followed.

Counsel's *Anders* brief raises the following issues:

1. Whether there was insufficient evidence at trial that [Williams] was in the possession of a firearm such as to sustain a conviction for Firearm Not to be Carried Without a License, 18 Pa.C.S.A. § 6106(a)(1)?[]

2. Whether there was insufficient evidence at trial that [Williams] was in the possession of a firearm such as to sustain a conviction for Possession of [a] Weapon, 18 Pa.C.S.A. § 907(b)?

3. Whether there was insufficient evidence at trial that [Williams] placed another person in danger of death or serious bodily injury such as to sustain a conviction for Recklessly Endangering Another Person, 18 Pa.C.S.A. § 2705?

4. Whether a new trial must be granted because the verdicts were against the weight of the evidence?

5. Whether there are any other meritorious claims, issues, or arguments upon which [Williams] may file an appeal?

*Anders* Br. at 5.

- 4 -

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). In the *Anders* brief, counsel seeking to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an

independent judgment to decide whether the appeal is in fact wholly frivolous." *Id.* at 355 n.5 (citation omitted).

Here, we find that counsel has complied with all of the above technical requirements. In his **Anders** brief, counsel provided a summary of the procedural history and facts of the case with citations to the record. Further, counsel's brief includes several issues that could arguably support the appeal, and counsel's assessment of why those issues are frivolous, with citations to the record and relevant legal authority. Additionally, counsel served Williams with a copy of the **Anders** brief and advised him of his right to proceed *pro se* or retain a private attorney to raise any additional points he deemed worthy of this Court's attention. **See** Application to Withdraw, 3/19/26, at ¶ 4. Williams has not responded to counsel's application to withdraw. As counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issues counsel has identified.

The first three issues in the **Anders** brief challenge the sufficiency of evidence to sustain Williams's convictions. The sufficiency of the evidence is a question of law. Therefore, "[o]ur standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Mikitiuk**, 213 A.3d 290, 300 (Pa.Super. 2019). When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." **Commonwealth v. Feliciano**, 67 A.3d 19, 23 (Pa.Super.

2013) (*en banc*) (citation omitted). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Id.* (citation omitted). This standard applies equally where the Commonwealth's evidence is circumstantial. *Commonwealth v. Patterson*, 180 A.3d 1217, 1229 (Pa.Super. 2018). This Court "may not substitute [its] judgment for that of the factfinder." *Commonwealth v. Griffith*, 305 A.3d 573, 576 (Pa.Super. 2023). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence – is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa.Super. 2017).

The first issue presented in counsel's *Anders* brief is whether there was sufficient evidence to sustain Williams's conviction for firearms not to be carried without a license. Williams's Br. at 14. Williams alleges that there was insufficient evidence presented to prove the object in his possession on the night of the incident was a firearm. *Id.*

To convict a defendant of carrying a firearm without a license under Section 6106, the Commonwealth must show that the defendant "carrie[d] a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license[.]" 18 Pa.C.S.A. § 6106(a)(1). A "firearm" is defined as "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol,

- 7 -

revolver, rifle or shotgun with an overall length of less than 26 inches." 18 Pa.C.S.A. § 6102.

Here, the trial court found that the evidence was sufficient to support Williams's conviction for firearms not to be carried without a license. It explained:

> During trial, Detective Rui Macedo testified that through video footage obtained from various businesses in the vicinity, he was able to identify [Williams]. [Williams] was identified with a "fanny pack" slung over his shoulder. Detective Macedo identified [Williams] based on his tattoos which were consistent with those in the still videos, in addition to his body shape and facial hair similarities. In the videos played at [trial], Detective Macedo noted that [Williams] is seen reaching over his back right waistband and draws something. The item is identified as a firearm. Further, the Detective testified that he searched to determine whether [Williams] had a license to carry a firearm, which he did not.

Trial Court Opinion, filed 10/16/24, at 4 (citations to trial transcript omitted).

We agree that this issue is frivolous. At trial, Williams contested whether the Commonwealth presented sufficient evidence of an operable firearm. *See* N.T. at 171, 184-86 (questioning whether Detective Macedo could differentiate between a real firearm and a less than lethal kinetic launcher that resembled a gun). Detective Macedo unequivocally testified that the object Williams possessed was a real firearm based on the totality of the circumstances including: a live 9-millimeter round was found on the ground near Philly Pub; four 9-millimeter shell casings were found on North Sixth Street; Williams was seen camera holding a gun and in with a confrontation

with Green; and he was seen following Green and Ford to Ford's apartment building, which is where the bullet hole was found. Based on the foregoing, there is no reasonable basis on which to argue that the evidence was insufficient to sustain Williams's conviction for firearms not to be carried without a license. Thus, Williams's insufficiency claim is frivolous.

The second issue presented in the **Anders** brief is whether there was sufficient evidence to sustain Williams's conviction for possession of a weapon.

To convict a defendant of possession of a weapon, the Commonwealth must show that the defendant "possesse[d] a firearm or other weapon concealed upon his person with intent to employ it criminally." 18 Pa.C.S.A. § 907(b).

Here, the court found the evidence was sufficient:

> [Williams] is seen taking something from his back right waist band. The video footage reflects what Detective Macedo refers to as a firearm[.] As Detective Macedo reviews the video footage, he notes several instances where [Williams] is seen with a firearm in his right hand while running down Sixth Street in Stroudsburg.
>
> In view of this testimony, along with all of the evidence, including the spent and unspent shell casings found near the scene, we find that the Commonwealth, as the verdict winner, has established sufficient evidence to enable the factfinder to find every element of the charges [] for [p]ossession of [w]eapon beyond a reasonable doubt.

Trial Ct. Op. at 4-5 (citations to trial transcript omitted).

For the same reasons set forth in the previous issue, we conclude that there is no reasonable basis on which to argue that the evidence was

insufficient to prove that Williams was in possession of a firearm. Accordingly, this claim is frivolous.

The third issue presented in the **Anders** brief is whether there was sufficient evidence to sustain Williams's conviction for REAP. A person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. To prove REAP, the Commonwealth must show that the defendant "(1) possessed 'a *mens rea* [of] recklessness,' (2) committed a wrongful deed or guilty act ('*actus reus'*), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person." **Commonwealth v. Emler**, 903 A.2d 1273, 1278 (Pa.Super. 2006) (citation omitted).

"Recklessness" is defined as "a conscious disregard of a known risk of death or great bodily harm to another person." **Id.** (citation omitted). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. REAP "requires the creation of danger, so the Commonwealth must prove the existence of an actual present ability to inflict harm to another." **Commonwealth v. Shaw**, 203 A.3d 281, 284 (Pa.Super. 2019). "[T]he actual discharging of a weapon numerous times in the vicinity of others constitutes a sufficient danger to satisfy the REAP statute." **Commonwealth v. Hartzell**, 988 A.2d 141, 144 (Pa.Super. 2009).

Viewing the evidence in the light most favorable to the Commonwealth, we agree that this issue is frivolous. The evidence showed that Williams followed Green and Ford to Ford's apartment building after a confrontation. Williams was observed on video to be carrying a firearm in his right hand. A bullet hole was found in the lobby door at the apartment building where Ford lived. There was also testimony that another resident of the apartment building, Jonathan Vasquez, was in the building at the time the shots were fired. **See** N.T. at 147. Williams possessed the *mens rea* of recklessness when he discharged his firearm into an apartment building that created an actual danger of death or serious bodily injury to its residents and bystanders.

The final issue presented in the **Anders** brief is whether the verdicts were against the weight of the evidence. "We review a trial court's order denying a weight challenge for an abuse of discretion." **Commonwealth v. Fallon**, 275 A.3d 1099, 1107 (Pa.Super. 2022). Because the trial court heard the testimony firsthand, we must "give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." **Id.** (citation omitted). A weight claim requires the defendant to first convince the trial court that "the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Commonwealth v. Windslowe**, 158 A.3d 698, 712 (Pa.Super. 2017) (internal quotation marks and citation omitted). This Court then reviews the trial court's decision in this regard for an abuse of discretion. **Id.** Further, "[t]he weight of the evidence is exclusively

for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citation omitted).

Here, the trial court stated that it "observed the entire trial" and found that "the jury correctly determined the facts" and "the verdict is not so contrary to the evidence which would shock one's sense of justice." Trial Ct. Op. at 7. On this record, we find no reasonable basis on which to challenge this determination. Williams's challenge to the weight of the evidence frivolous.

In sum, we find the issues raised in counsel's ***Anders*** brief are frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists and the appeal is wholly frivolous. Therefore, we grant counsel's application to withdraw. Having determined that the appeal is wholly frivolous, we affirm the judgment of sentence.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/2/2026